# Court of Sessions.

July, 1895.

## PEOPLE v. JAMES F. CLEARY.

(70 S. R. 209.)

1. **Criminal law—Indictment—Statute.**

    The words used in a statute need not be strictly pursued in an indictment, but the indictment is good if it follows the language of the statute defining the crime.

2. **Statutes—Repeal—Implication.**

    When a revising statute covers the whole subject-matter of antecedent statutes, the revising statute virtually repeals the former enactments, without any express provision to that effect.

3. **Same.**

    Section 351 of the Penal Code was impliedly repealed by chap. 479 of 1887, as amended by chap. 469 of 1893.

4. **Same.**

    Section 9, article 1 of Revised Constitution abrogated the provisions of chap. 479 of 1887, as amended by chap. 469 of 1893.

5. **Same.**

    Where all the provisions of an act are connected as parts of a single scheme, the incidental provisions must fall with the failure of the main purpose.

6. **Same.**

    The subsequent amendment to section 351 of the Penal Code cannot affect the defendant inasmuch as its provisions, in so far as they relate to the crime charged in the indictment, are ex post facto.

7. **Same—Construction Act.**

    Section 31 of the Construction Act, which provides that the repeal of a statute shall not affect any penalty, forfeiture or imprisonment, incurred before the time the repeal takes place, does not apply to statutes enacted by subsequent legislature.

James F. Cleary was convicted of recording and registering bets and wagers and of selling pools on horse races on April 25, 1895. Defendant demurs to the indictment.

James C. Fursman, Charles E. Patterson, and William J. Roche, for defendant.

John P. Kelly, Dist. Atty., and George B. Wellington, for the People.

GRIFFITH, J.—The language used in the indictment to define the crime charged is taken from chapter 479 of the Laws of 1887, as amended by chapter 469 of the Laws of 1893, which is commonly called the "Ives Pool Law." It therefore follows that the pleader had in his mind an offense against this particular statute while preparing the indictment. The rule does not require that the words used in the statute need be strictly pursued in an indictment (Code Cr. Proc., § 283), but the indictment is good if it follows the language of the statute defining the crime. People v. Farrell, 28 St. Rep. 43. The statute of 1893, supra, makes the offense charged in the indictment a felony, while section 351 of the Penal Code, describing nearly the same offense, makes it a misdemeanor. The question, under which statute is the indictment drawn? becomes an important one in considering another principle urged in the defendant's behalf upon the hearing. Section 351 of the Penal Code provides that any person who keeps any room, shed, tenement, booth, or building, or any part thereof, or who occupies any place upon any public or private grounds within the state with books, apparatus, or paraphernalia for the purpose of recording or registering bets or wagers, or of selling pools, and any person who records or registers bets or wagers or sells pools upon the result of any trial or contest of skill, speed, or power of endurance of man or beast, or being the owner, lessee, or occupant of any room, shed, or tenement, tent, booth or building, or part thereof, knowingly permits the same to be used or occupied for any of these purposes, or therein keeps, exhibits, or employs any device or apparatus for the purpose of recording or registering such bets or wagers, or the selling of pools, or becomes the custodian or depositary, for hire or reward, of any money, property, or thing of value staked, wagered, or pledged upon any such result, shall be punished by imprisonment for one

year, or by a fine, not exceeding $2,000, or both. In the year 1887 the legislature passed a law (chapter 479) by which the operation of this section of the Penal Code was suspended, and permitted recording or registering bets or wagers and selling pools upon the result of contests of skill, speed, and power of endurance of horses upon the race tracks and grounds on which racing is had, owned or leased or conducted by racing associations incorporated under the laws of the state of New York for the purpose of improving the breed of horses, but continued the inhibitions of the Penal Code under more severe penalties if such pool selling was conducted elsewhere than on the race tracks and grounds of such racing associations. In 1893 an amendment to the Laws of 1887 was passed, which is known as "chapter 469," which, while it permitted pool selling and recording and registering bets on contests of speed and endurance of horses upon race tracks and grounds owned, leased, or conducted by racing associations incorporated under the laws of the state of New York for the purpose of improving the breed of horses, declared any person who should engage in such pool selling, book making, or receiving or recording bets or wagers elsewhere, to be guilty of a felony. A careful examination of chapter 469 of the Laws of 1893, and a comparison of the language of that statute with the wording of the indictment, lead me to the conclusion before stated, that the pleader had not only this particular statute in mind when preparing the bill, but followed its language in defining the crime.

The question is suggested, what effect did the Ives pool law, as amended, have upon section 351 of the Penal Code? Both statutes are general in their provisions, and whether a subsequent statute repeals a prior one in the absence of express words depends upon the intention of the legislature, and one of the tests frequently resorted to to ascertain whether there is a repeal by implication is to inquire whether the acts may both be executed without involving repugnancy of rights or remedies.

It would seem that the Ives pool law was intended to revise the then existing statutes upon the subject of pool selling and book making, and consolidate them, for by section 351 of the

Penal Code it was made unlawful for any person to register or record bets or wagers or sell pools at any time or at any place, while the Ives pool law permitted such practices on certain days and times upon race tracks or grounds on which racing is had, owned, leased or conducted by racing associations incorporated, etc., but prohibited this species of betting and gaming elsewhere, virtually reenacting the provisions of section 351 and applying its prohibitions for all places except the race tracks and grounds aforesaid, and changing the character of the offense from a misdemeanor to a felony. It does seem that after April 22, 1893, the only penal statute under which a prosecution for pool selling and book making could be made was the amended Ives pool law. The decisions seem to hold that, where prior laws are revised and consolidated into a new act, such act is to be deemed to contain the entire law upon the subject, and that a prior provision of law, which is dropped is to be regarded as repealed. In Ellis v. Paige, 1 Pick. 43, it is said:

"It is a well-settled rule that when any statute is revised, or one act framed from another, some parts being omitted, the parts omitted are not to be revived by construction, but are to be considered as annulled. To hold otherwise would be to impute to the legislature gross carelessness or ignorance, which is altogether inadmissible."

In Bartlet v. King, 12 Mass. 537, it was held that:

"A subsequent statute, revising the whole subject-matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must on principles of law, as well as in reason and common sense, operate to repeal the former."

In Re New York Institution for Deaf and Dumb, 121 N. Y. 234; 30 St. Rep. 921, Judge Earl says that:

"Where two statutes relate to the same subject-matter, though not in terms repugnant and inconsistent, if the later one is plainly intended to prescribe the only rule that shall govern, it will repeal the earlier one."

No end of precedents can be cited to sustain the principle that, when a revising statute covers the whole subject-matter

of antecedent statutes, the revising statutes virtually repeal the former enactments, without any express provision to that effect. Butler v. Russel, 3 Cliff. 251, Fed. Case. No. 2,243; Patterson v. Tatum, 3 Sawy. 164, Fed. Case No. 10,830; Daviess v. Fairborn, 3 How. 636; Norris v. Crocker, 13 How. 429; King v. Cornell, 106 U. S. 395; Heckmann v. Pinkney, 81 N. Y. 211; People v. Gold & Stock Telegraph Co., 98 id. 67; People v. Jaehne, 103 id. 182; 3 St. Rep. 11; In re Southworth, 5 Hun, 55.

In construing statutes the following rule is laid down:

"Where a later statute contains no reference to the former statute, and defines an offense containing some of the elements constituting the offense defined in such former statute and other elements, it is a new and substantive offense. * * * So if the later statute prescribe a punishment for acts with only a part of the ingredients or incidents essential to constitute the offense defined in a former statute; but if the same offense, identified by name or otherwise, or if a felony is changed to a misdemeanor, or vice versa, the statute making such changes has the effect to repeal the former statute. * * * Where a new law covers the whole subject-matter of an old one, adds new offenses and prescribes different penalties for those enumerated in the old law, then such former law is repealed by implication." Suth. St. Const., § 143.

Applying this rule for a construction of the laws prohibiting pool selling and book making, we are led, "upon principles of law as well as in reason and common sense," to the conclusion that the Ives pool law repealed all previous statutes upon that subject, and therefore section 351 of the Penal Code was not in force or effect at the time of the commission of the criminal offense charged in the indictment. Section 9 of article 1 of the new constitution went into effect January 1, 1895, and forever forbade pool selling, book making, or any other kind of gambling within the state. This abrogated the provisions of the Ives pool law, which permitted pool selling, book making and gambling at certain times and places. This provision of the constitution is the law of the state upon this subject, and must be so treated, as effectually as if it were ingrafted into a

statute. Cooley, Const. Lim. 55; People v. Barber, 48 Hun,. 198; 15 St. Rep. 601. Section 16 of article 1 of the constitution sets at rest all contention on this point, and by its very language abrogates all parts of the common law and statutes repugnant to the constitution. Certain is it that the first six sections of the Ives pool law are abrogated by the new constitution, and the remaining section (7) forbids any person from engaging in pool selling or book making at any time or place," except as hereinbefore stated." Now, if the six sections preceding it are invalid, what meaning can be given to the words following relative to race tracks or grounds? Again, section 7 declares it to be unlawful for any person to receive money to forward to any race course, whether managed and conducted in obedience to the provisions of this act or not. This section cannot stand alone. It is so thoroughly connected with the previous sections that it must fall with them; the rule being: "Where all the provisions of an act are connected as parts of a single scheme, the incidental provisions must fall with the failure of the main purpose." Suth. St. Const., § 174. The counsel for the people urges with great earnestness that by reason of section 728 of the Penal Code the Ives pool law should not be deemed to have repealed, altered, or amended section 351, because the statute did not explicitly refer thereto, and directly repeal, alter, or amend section 351. Chapter 479 of the Laws of 1887 did explicitly refer to sections of the Penal Code, and did suspend the operation thereof in certain places.

If the counsel for the people is right in his contention, we are met by another obstacle, and that is by chapter 572 of the Laws of 1895, which purports to amend section 351 of the Penal Code, which amendment prescribes a different punishment for the offenses therein named, and, as the act contains no saving clause which refers to offenses of the same character committed before the amendment, it must be considered as an ex post facto law to the defendant accused in this indictment. The counsel for the people also urges that section 31 of the construction act (chapter 677, Laws 1892) must be considered as a saving clause sufficient to continue the penalties and punishments for offenses incurred prior to the time such repeal

takes place. 'At first reading of that section one might be led to that conclusion, but upon examining a similar law (section 6, chapter 21, Laws 1828-29), and the construction put thereon by the court of appeals in the case of Mongeon v. People, 55 N. Y. 613, I conclude that section 31 related solely to acts repealed by said act, and had no respect to subsequent legislation; for, to use the language of Judge Allen in the Mongeon Case, "The legislature could not declare in advance the intent of subsequent legislatures, or the effect of subsequent legislation upon existing statutes." In 1893, when the Ives pool law was amended (chapter 496), a section was added providing that nothing in that act should be construed as affecting an offense committed at any time before the day the act took effect, and providing that all such offenses must be punished according to the provisions of law existing when the offense was committed. Again, by chapter 77 of the Laws of 1894, several subdivisions of section 41k of the Penal Code were repealed, and section 41m was amended, but no saving clause was enacted. About a month after, the legislature amended chapter 77 by adding a saving clause. Laws 1894, chap. 282, § 2. This shows clearly that the legislature and the commissioners to revise the statutes did not regard section 31 of the construction act (supra) as affecting subsequent legislation, for the passage of the several saving clauses aforesaid after the year 1892 would impute to the legislature gross carelessness or ignorance, which is inadmissible. Bartlet v. King, ubi supra. I am therefore of the opinion that the Ives pool law repealed the provisions of the Penal Code relative to pool selling and book making, and the adoption of the new constitution abrogated the Ives pool law, and at the time of the commission of the offenses named in the indictment (while the same were made unlawful by the terms of the constitution) no punishment was prescribed for such offenses, and the subsequent amendment to section 351 of the Penal Code cannot affect the defendant, for the reason that its provisions, in so far as they relate to the crime charged in the indictment, are ex post facto. The case of Hartung v. People, 22 N. Y. 95, expresses the law of this state upon the subject of repealing laws imposing penalties and

changing the punishment for offenses without the enactment of a special clause in the act saving such proceedings after the repeal for offenses committed before the repeal, and the maxim, "Stare decisis et non quieta movere," must be followed. My examination leads me to rule that the indictment is good in form, but, it appearing on the face thereof that the facts stated therein did not constitute a crime punishable either by statute or common law at the time when the same are alleged in the indictment, judgment should be given on the demurrer by allowing the same, and an order to that effect should be entered upon the minutes of this court.

Ordered accordingly.

GIFFORD and HOAG, JJ., concur.

### NOTE ON "REPEAL BY IMPLICATION."

General act does not repeal local act by implication unless the two acts are inconsistent. People ex rel. Strough v. Board of Co. Canvassers, 77 Hun, 372; 60 S. R. 410; aff'd, 143 N. Y. 84; 60 S. R. 467; People ex rel. Lardner v. Carson, 10 Misc. 237; 62 S. R. 459; aff'd, 86 Hun, 617; James v. Sammis, 132 N. Y. 239; 43 S. R. 910; aff'g 31 id. 192.

Special statute is not repealed by general statute, unless the intention of the legislature to repeal or alter is manifest. Buff. Cem. Ass'n v. Buffalo, 118 N. Y. 61; 27 S. R. 749; aff'g 5 S. R. 394.

In absence of repealing clause, earlier statute must be treated as in force, unless so repugnant and inconsistent with later act that both cannot be construed together. Ackerson v. Board of Suprs., 45 S. R. 173; aff'd, 55 id. 277; People v. Koenig, 9 App. Div. 436; 41 Supp. 283; Heckmann v. Pinkney, 81 N. Y. 215; People v. Jaehne, 103 id. 182; McKenna v. Edmundstone, 91 id. 231.

Where two inconsistent acts are enacted on the same day, order of their priority may be inferred from their respective numbers. Ottman & Co. v. Hoffman, 7 Misc. 714; 58 S. R. 320.

Where two statutes relate to same subject and are enacted for the same purpose, earlier must be deemed to have been repealed by implication. Eagan v. City of Rochester, 68 Hun, 331; 52 S. R. 285.